# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVE E. RICHARD JR., | |
| Plaintiff, | CIVIL ACTION NO. 2:24-cv-01060 |
| v. | (SAPORITO, J.) |
| GOODWILL SOUTHWEST PENNSYLVANIA, | |
| Defendant. | |

## <u>MEMORANDUM</u>

This is an employment discrimination and retaliation case. In his amended complaint, Doc. 11, the plaintiff, Dave E. Richard Jr., claims that the defendant, his employer, violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*

The defendant, Goodwill Southwest Pennsylvania, has moved to dismiss the plaintiff's amended complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 12. Goodwill's motion is fully briefed and ripe for decision. Doc. 13; Doc. 17; Doc. 18.

## I.   FACTUAL BACKGROUND

Dave Richard was employed by Goodwill as a custodian, performing janitorial services at a federal courthouse under a contract between Goodwill and the federal government. From time to time, Richard served as a "temporary fill-in lead" as well, performing additional supervisory duties on an as-needed basis at an increased hourly wage.

Richard has been diagnosed with, and receives treatment for, high anxiety disorder. He also has a history of previous treatment for attention deficit hyperactive disorder and learning disabilities. His employer, supervisors, and co-workers were aware of these mental impairments, as well as various behavioral and personality characteristics associated with his underlying diagnoses.

Richard applied for a promotion to a "team lead" position. He faced competition for this position from a non-disabled co-worker, Sean Dixon, but Richard apparently had been assured that he would be advanced over Dixon on the basis of his superior qualifications. Ultimately, however, Richard learned in September 2023 that he had been passed over for the promotion, and the position was awarded to Dixon instead. Richard asked staff in the human resources department why he was denied the

promotion. They told him Richard's supervisor, Gregg Lafferty, made the decision to promote Dixon instead of Richard, ostensibly because Richard had been the subject of tenant complaints, because he had "problems" with a disabled co-worker, Brett Roberts, and due to attendance problems. In his amended complaint, Richard has disputed each of the proffered reasons for his being passed over, suggesting that they were pretexts for a discriminatory employment action. The amended complaint further alleges that Dixon was chosen not based on merit, but due to his association with a prior company—Richard alleges that his employer has exhibited a bias in favor of employees of that prior company.

The amended complaint also alleges that Richard was the subject of verbal harassment from his supervisor and various co-workers. Lafferty was dismissive and abusive toward his employees, screaming at them in the hallways. Christine Hubstenberger "yelled and screamed" at Richard "for weeks." Brett Roberts called Richard and other co-workers derogatory names, such as "retarded," and falsely accused them of harassment; the amended complaint also alleges unspecified conduct by Brett Roberts that constituted "gender harassment." Rachel Hough, Richard's indirect supervisor, repeatedly demanded Richard's badge

without providing a reason, expressed "hostility" toward Richard, and was dismissive and unhelpful when Richard tried to provide her with documentation of his claims of discriminatory and abusive behavior by other employees.

The amended complaint alleges that Richard's pay rate was reduced in retaliation for protected activity under the ADA.[1] Richard had disclosed his pay rate to his father, who also worked for Goodwill as a custodian, which prompted his father to file an EEOC charge regarding discriminatory pay practices.

The amended complaint alleges that Richard's supervisor, Lafferty, required him to perform team lead duties in addition to his base-employee duties, without fully compensating him as a team leader. It also alleges that Lafferty assigned unspecified tasks to Richard that were outside his job description, and that were not required of other employees. On one occasion, Richard was asked to work two consecutive

---

[1] The exhibits attached to the amended complaint suggest that the pay rate referenced here may have been the higher pay rate applicable when Richard served as a temporary fill-in lead. For one period in June 2021, Richard was paid $20.71 per hour when performing as a temporary fill-in lead on an as-needed basis. *See* Doc. 11-55. For a second period in March 2022, Richard was paid only $19.44 per hour for the same job as a temporary fill-in lead on an as-needed basis. *See* Doc. 11-57.

weekends to provide snow removal services, but the same sort of extra work demand was not imposed on Dixon. On another occasion, Richard was reprimanded for leaving a building temporarily to obtain supplies, when another, unidentified employee was not similarly reprimanded for leaving a building unattended. On a third occasion, another employee used "severe profanity" toward a supervisor, but did not face termination.

The amended complaint alleges that, at some point shortly before he was terminated, Richard was told to stay home, without any explanation. The charge of discrimination Richard submitted to the EEOC, however, indicated that, on or about January 19, 2024, Richard had gotten into a "verbal altercation" with his indirect supervisor, Hough, about a complaint that had been submitted to human resources by a female co-worker who complained that Richard had been harassing her. Doc. 14-1.[2] As a result of this encounter with Hough, Richard's disabilities were "exacerbated," and he told his supervisor he needed to

---

[2] "The Court can consider the EEOC Charge without converting the motion to a motion for summary judgment." *Belton v. Allegheny Gen. Hosp.*, 703 F. Supp. 3d 685, 691 n.2 (W.D. Pa. 2023); *see also Lowenstein v. Catholic Health E.*, 820 F. Supp. 2d 639, 645 n.2 (E.D. Pa. 2011) ("The Court may consider the EEOC charge at the motion-to-dismiss stage because it is 'an undisputedly authentic document' on which 'plaintiff's claims are based.'").

leave work.[3] *Id.*

On January 29, 2024, Richard was terminated from his employment with Goodwill.

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the

---

[3] It appears that Richard was then told to stay home, either by his supervisors or by human resources. The amended complaint is not clear on this point.

complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.  DISCUSSION

The plaintiff's counseled amended complaint sets out his claims in six counts.

Count I alleges that Richard was verbally harassed by various co-workers and supervisors, and it alleges, in conclusory fashion, that this verbal harassment was because of his disability or gender. Because the count does not expressly reference Title VII, the ADA, or the PHRA, we have considered whether this count asserts a state-law tort claim, for which administrative exhaustion would not be required, but it is well

established that verbal harassment is not an actionable tort in Pennsylvania. *See Utah v. Strayer Univ.*, 667 Fed. App'x 370, 371 (3d Cir. 2016) (per curiam); *Castro-Mota v. Cook*, No. 2:23-cv-1920, 2025 WL 1724922, at *7 (W.D. Pa. June 20, 2025); *Prukala v. Elle*, 11 F. Supp. 3d 443, 450 (M.D. Pa. 2014); *Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310, 319 M.D. Pa. 1994); *DeAngelo v. Fortney*, 515 A.2d 594, 596 (Pa. Super. Ct. 1986). Thus, we have construed Count I to assert a hostile work environment claim under Title VII, the ADA, and the PHRA, arising out of various instances of workplace verbal harassment.

Count II asserts a hostile work environment claim under Title VII, arising out of the same verbal harassment upon which Count I was based, plus allegedly "abusive" or "hostile" conduct by his indirect supervisor, Hough, and a discussion with the company's human resources director, whose inability to explain why he was told not to come into work caused him "uncertainty" regarding his employment status.

Count III asserts a disability discrimination claim under the PHRA, arising out of several discrete acts of discrimination, including the employer's failure to promote Richard instead of a less-qualified non-disabled co-worker, the assignment of extra work duties to Richard that

were outside the scope of his job description, the assignment of consecutive weekends of snow-removal duty to Richard, and the reprimand of Richard for leaving a building temporarily to obtain supplies when another employee was not reprimanded for similar conduct.

Count IV asserts a disability discrimination claim under Title VII and the PHRA, arising out of the employer's failure to promote Richard instead of a less-qualified non-disabled co-worker.[4]

Count V asserts a retaliation claim under the ADA and the PHRA, alleging that Richard's employer reduced or denied Richard's allotment of overtime work opportunities and failed to deliver a promised wage raise in retaliation for an unspecified request by Richard for an accommodation of his disabilities.

Count VI asserts a second disability discrimination claim under Title VII, the ADA, and the PHRA, arising out of the same failure to promote Richard instead of a less-qualified non-disabled co-worker that formed the basis of Count IV.

---

[4] The plaintiff's amended complaint labels this as a hostile work environment claim, but it is clearly a failure-to-promote claim based on a single, discrete act of alleged discrimination.

Although the amended complaint alleges the fact of his termination, it does not assert a discriminatory discharge claim.

The defendant has moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The defendant contends that Richard failed to exhaust administrative remedies with respect to all claims asserted in the amended complaint.

"As a precondition for filing suit under Title VII, . . . the ADA and the PHRA, a plaintiff must exhaust a claim by presenting it in an administrative charge to the [U.S. Equal Employment Opportunity Commission ("EEOC")] and the [Pennsylvania Human Rights Commission ("PHRC")]." *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 601 (E.D. Pa. 2015). An employee is not permitted to bypass the administrative process. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). The "fundamental aim of the pre-suit requirements is to 'give prompt notice to the employer' and 'encourage the prompt processing of all charges of employment discrimination.'" *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 121 (2002)).

"The ensuing suit is limited to claims that are within the scope of the initial administrative charge." *Barzanty v. Verizon PA, Inc.*, 361 Fed. App'x 411, 413–14 (3d Cir. 2010). "A claim has been administratively exhausted when the specifics of a charge with the administrative agency 'fairly encompass a claim' and would put the agency and the defendant employer 'on notice' of that claim." *Ford-Greene*, 106 F. Supp. 3d at 600–01 (quoting *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). The "relevant test" in the Third Circuit for exhaustion of administrative remedies is "whether the acts alleged in the subsequent . . . suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *see also Simko*, 992 F.3d at 207 (quoting *Waiters*, 729 F.2d at 237); *Hewitt v. BS Transp. of Ill., L.L.C.*, 355 F. Supp. 3d 227, 235 (E.D. Pa. 2019). "This determination turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it." *Hewitt*, 35 F. Supp. 3d at 235.

Richard signed and submitted his charge of discrimination to the EEOC and the PHRC on May 10, 2024. Below the prompt

"DISCRIMINATION BASED ON," Richard responded "Disability" only, making no reference to gender-based discrimination or retaliation. Below the prompt "DATE(S) DISCRIMINATION TOOK PLACE," Richard responded that it occurred between the earliest date of "1/29/2024" and the latest date of "1/29/2024." Following the prompt "THE PARTICULARS ARE," Richard provided the following narrative response:

> 1.    I was hired by the respondent in December of 2020. I held the position of temporary team leader. During my employment, I had several pay issues and job duties outside my job description reported. On or around January 19th, 2024[,] I got into a verbal argument with my director (Rachel Hough), stating that a complaint was filed against me from a female employee who complained I was harassing her. During the verbal altercation, my disabilities became exacerbated. I stated to my supervisor that I had to leave. Several days later, I was contacted and discharged.
>
> 2.    I was discharged for the use of foul language.
>
> 3.    I feel I was discriminated against under the Americans with Disabilities Act of 1990, as amended[,] [w]here I reported my disabilities being exacerbated and was discharged soon after.

Doc. 14-1.[5]

---

[5] *See supra* note 2.

Looking first to the EEOC charge itself, there are simply no allegations of gender-based discrimination, no allegations of a hostile work environment, and no allegations of retaliation apparent on the face of the EEOC charge. *See Simko*, 992 F.3d at 208. The only theory of disability discrimination advanced in the EEOC charge was one of discriminatory discharge, and the only material facts alleged concerned a verbal argument or altercation between Richard and an indirect supervisor on or about January 19, 2024, his disclosure to his supervisor about his disabilities being exacerbated by that encounter, and his subsequent termination on January 29, 2024. Richard's hostile work environment, failure-to-promote, and retaliation claims asserted in the amended complaint do not fall fairly within the scope of the EEOC charge itself.

We next consider the scope of the EEOC investigation arising from that charge. In doing so, "the Court must look only at the scope of the EEOC investigation that would reasonably grow out of, or arise from, the initial charge filed with the EEOC, irrespective of the actual content of the Commission's investigation." *Simko*, 992 F.3d at 208–09 (internal quotation marks omitted). "[W]hen determining whether a claim fairly or

reasonably falls within the investigation arising from a charge, courts

consider (1) whether the claim arises from the same set of facts that

support the original charge and (2) whether the claim advances the same

theory of discrimination as the original charge." *Simko*, 992 F.3d at 209.

> [T]he original charge is the touchstone of our exhaustion analysis. First, we closely examine the original charge's contents to determine the reasonable scope of the EEOC investigation that would likely occur. Second, we parse the later claim and determine whether its allegations would be covered in that reasonable investigation. At bottom, we must compare the two sets of allegations and evaluate whether they are sufficiently related such that a reasonable investigation of the original charge would address the subsequent, unexhausted claims. In comparing the two sets of allegations, we look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue. Such factual overlap alone, however, does not guarantee that the new allegations are encompassed by the original charge if they do not fall within the "gravamen" of the initial charge. But even if we find no factual nexus, we may also consider whether the two sets of allegations advance the same theory of discrimination . . . .

*Id.* at 210–11 (citations omitted).

Based on the allegations of the EEOC charge itself, set forth above,

a reasonable investigation would encompass Richard's termination and

the events of January 2024 leading up to that employer action, including

his interaction with Rachel Hough on or about January 19, 2024, and perhaps the underlying harassment complaint brought against Richard by a female co-worker.

Count I, asserting a hostile work environment claim, is based on alleged verbal harassment of Richard by supervisors and co-workers over an unspecified period of time, entirely unrelated in any way to the discriminatory discharge claim asserted in his EEOC charge.

Counts III, IV, and VI assert discrete disability discrimination claims arising out of Goodwill's failure to promote Richard instead of a non-disabled co-worker, and various other instances of allegedly discriminatory treatment on the job. The factual basis for these claims is likewise entirely unrelated in any way to the discriminatory discharge claim asserted in the EEOC charge.

Count V asserts a retaliation claim based on a reduction in overtime work opportunities made available to Richard, and failure to deliver on a promised wage raise, in retaliation for an unspecified request for accommodation of Richard's disabilities. The factual basis for this claim is entirely unrelated in any way to the discriminatory discharge claim asserted in Richard's EEOC charge.

Richard's EEOC charge did not include the facts giving rise to the hostile work environment, retaliation, gender-based discrimination, or disability discrimination claims asserted in Counts I, III, IV, V, or VI of his amended complaint. Thus, the plaintiff has failed to exhaust his administrative remedies with respect to the claims asserted in Counts I, III, IV, V, and VI because they are not fairly encompassed within the scope of his EEOC charge.

Count II is based not only on the same verbal harassment giving rise to Count I, but also on allegedly "abusive" or "hostile" conduct of his indirect supervisor, Hough, during a verbal altercation that appears to have led to his termination. Arguably, this last encounter may fall within the scope of the EEOC charge, but the prior incidents of verbal harassment—both different in nature and involving different employees—do not. That single heated interaction with a supervisor, however, is insufficient to support a hostile work environment claim, particularly in the absence of any factual allegations whatsoever to demonstrate that the allegedly abusive or hostile conduct was pervasive or severe, or to suggest that it was based on Richard's disability. *See McKinney v. Hackensack Meridian Health, Inc.*, 749 Fed. App'x 139, 144

& n.8 (3d Cir. 2018) (holding that an isolated verbal reprimand, in which a supervisor pointed his finger in the plaintiff's face, was neither severe nor pervasive); *Walton v. Mental Health Ass'n of S.E. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) ("A personality conflict doesn't ripen into an ADA claim simply because one of the parties has a disability."). Thus, Count II has failed to state a claim upon which relief can be granted.

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Here, it is clear that any amendment to the claims asserted in the amended complaint would be futile, as the time permitted for filing an EEOC charge has expired. But it is not clear that a second amended complaint limited to a discriminatory discharge claim, or other claims fairly within the scope of the plaintiff's EEOC charge as set forth above,

would be futile.[6] Therefore, we will dismiss the amended complaint with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss will be granted. The amended complaint will be dismissed for failure to state a claim upon which relief can be granted, but the plaintiff will be granted leave to file a second amended complaint within a specified time period. If a second amended complaint is not timely filed, the case will be closed.

Dated: September 22, 2025     _s/Joseph F. Saporito, Jr._
                            JOSEPH F. SAPORITO, JR.
                            United States District Judge

---

[6] The defendant suggests in its reply brief that such an amendment would be futile because it would not relate back to the original complaint in this action. But, while it did not assert a discriminatory discharge claim, the original complaint did allege facts regarding the plaintiff's termination and the "verbal altercation" with Hough that preceded it. *See* Doc. 1.

> Although it is true that Plaintiff's amendment states a new and different claim, it clearly arose out of the same occurrence set forth in the original complaint. Furthermore, even though Plaintiff may be alleging a different interpretation of the facts, or that the facts give rise to a different claim, he will still be alleging the same facts which give rise to his original cause of action. This is clearly sufficient to satisfy the doctrine of "relation back."

*Marinari v. Dunleavy*, 86 F.R.D. 127, 130 (E.D. Pa. 1980).

- 18 -